**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DISABILITY RIGHTS NEW YORK,

<em>Plaintiffs,</em>

-against-

NORTH COLONIE BOARD OF EDUCATION,
North Colonie Central Schools, and
Mr. D. Joseph Corr, in his official capacity as the
Superintendent of North Colonie Central Schools,

<em>Defendants.</em>

**Declaration**

Case No. 1:14-CV-0744 (DNH/RFT)

**Julie M. Keegan, Esq.,** being duly sworn, deposes and says:

1. I am a staff attorney employed by Plaintiff Disability Rights New York (DRNY).

2. I am admitted to practice in New York State and before this Court.

3. I am counsel for the Plaintiff in this action.

4. I make this declaration in support of the Plaintiff.

Protection and Advocacy System

5. DRNY is a not-for-profit corporation authorized to practice law under New York State law.

6. DRNY is the designated Protection and Advocacy System for individuals with disabilities in New York State as set forth in Executive Law §558(b). See Designation Letter Attached Exhibit A.

7. Congress created a Protection and Advocacy system of independent agencies in each state and territory with the authority to protect the human and civil rights of individuals with disabilities. S Rep. No. 99-109, at I; 42 U.S.C. §6000

8.  DRNY is authorized to fully investigate any complaints we receive that allege abuse or neglect occurring in any public or private entity that provides care, services, treatment and/or habilitation to person with disabilities.  Developmental Disabilities Assistance and Bill of Rights Act. 42 U.S.C. § 15043 (a)(2)(H); 45 C.F.R. § 1386.22

9.  Specifically, DRNY has "the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred" 42 U.S.C. § 15043[2][(B].

10. Similarly, DRNY has the same authority to protect individuals with mental illness or other disabilities pursuant to the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI) and the Protection and Advocacy for Individual Rights (PAIR).  See respectively, 42 U.S.C. §10805(a)(1)(A) and 29 U.S.C. § 794e (f)(2). See also, NY Executive Law § 558(b).

11. DRNY is also authorized to monitor a facility or program's compliance with respect to the rights and safety of individuals with disabilities and individual treatment plans. 45 C.F.R. § 1386.22(g)(2); 42 C.F.R. § 51.42(c)(2)

Plaintiff's Investigation of the North Colonie Central School District

12. On April 22, 2014, I received a complaint by telephone alleging a student from the Defendant's Blue Creek Middle School Academic Skills Class ("ASC 3-5) was a victim of verbal and physical harassment by a staff person.

13. Upon information and belief, the ASC 3-5 program is a self-contained class for students with a variety of developmental disabilities, mental illness and/or disabilities that impact learning and manifest in significant behavioral challenges at school.  The class size has ranged from seven to ten students in each of the past three years.  The class is staffed by a

Special Education teacher, a Teaching Assistant and two or more aides. My belief is based on information provided to me by complainants.

14. On May 9, 2014, I received two additional complaints by telephone alleging abuse and neglect of students currently placed in the ASC 3-5 class.

15. Complainants reported acts of abuse and neglect which they had direct knowledge of or which was reported to them by a student in the program.

16. Both Complainants also alleged violations of the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. § 1400 et seq. and reported that students in Defendant's ASC 3-5 program do not have Behavior Intervention Plans despite a history of significant behaviors at school that impede learning and the learning of others. A Behavioral Intervention Plan is required by federal and state law under these circumstances. 20 U.S.C. § 1414(d)(3)(B)(i-v); 8 NYCRR § 200.22(b)

17. On June 5, 2014, the Third Complainant reported an additional incident of neglect by the District Nurse that put the student at substantial risk of harm or death.

18. On May 13, 2014, I received a fourth complaint alleging that Defendants' use a supplemental space which when used puts students in the ASC 3-5 classroom at serious risk of injury or death.

19. The Fourth Complainant also reported an incident that occurred in early May 2014 which, due to the District's neglect, put the student in imminent danger of injury or death.

20. On May 30, 2014, I received a fifth complaint alleging abuse and neglect of a student who had been physically restrained multiple times while in the ASC 3-5 program.

21. The complainant stated that the student's behavior has severely escalated and that the Defendants did not make any effort to conduct a functional behavior assessment or develop a systematic behavior intervention plan as is required by federal and State law to avoid unnecessary physical intervention.  20 U.S.C. § 1414(d)(3)(B)(i-v); 8 NYCRR § 200.22(b)

22. On June 2, 2014, the Fifth Complainant subsequently reported to me two separate incidents occurring that day reported by staff of the ASC classroom.  These two incidents exposed the student to substantial risk of injury or death multiple times.

23. On June 9, 2014, I received a sixth complaint reporting that students in the ASC 3-5 classroom are often removed from the primary classroom to a nearby bathroom that has a toilet area and shower area.

24. The sixth complainant alleged that the shower fixture in the bathroom is comprised of a metal showerhead attached to a movable metal hose that can be stretched away from the wall.  The door to this room can be locked from inside and students have locked adults out on several occasions.  The complainant alleged that being alone in this room places students at risk of self-injury or death.

25. Complainants have also reported that students in this program have attempted to choke or strangle themselves with shoelaces or belts and present with threats of suicide.

26. I also received complaints that students in the Defendants' ASC programs are routinely escorted from the program using a physical intervention, in which two adults restrain the arms of a student who is physically acting out or threatening harm and physically move the student to another location.

27. I have also received complaints that a staff member of the ASC program frequently yells at the students, escalates the students to the point that they become agitated and aggressive, and is verbally and physically abusive towards these students.

28. I have practiced as an attorney in the area of special education law for over 10 years. Based on my communications with the complainants and the information provided, I found the complaints to be credible.

29. Based on the nature, number and credibility of the complaints received, DRNY determined an expanded investigation of the ASC programs at Blue Creek Elementary School was warranted, including access to the locations within the school used by the ASC program and observation of the students in these locations.

30. By letter dated June 12, 2014 to D. Joseph Corr, Superintendent of the District, and David Semo, Director of Pupil Services at the District, DRNY requested access to all areas and locations throughout the school available to students in the ASC programs on June 17, 2014 between the hours of 8:00 AM and 4:00 PM. See Attached Exhibit 1 June 12, 2014 letter and attachments.

31. By letter dated and received by DRNY on June 16, 2014 at 2:43 PM, Kenneth Ritzenberg, Attorney for the District, denied DRNY access to Defendants' building and program.

32. At approximately 3:45 PM on June 16, 2014, I had a phone conversation with Mr. Ritzenberg in which I explained the legal basis of DRNY's access authority and confirmed our need for access as part of DRNY's investigation. After consulting with the Defendants, Mr. Ritzenberg replied by email that the District remained unwilling to grant us access. See Exhibit 2 June 16, 2014 email correspondence.

33. Access to the ASC 3-5 programs and students is essential to DRNY's obligation to fully investigate the credible complaints of abuse and neglect.

34. Observation of the students while in the ASC 3-5 program as well as observation of the operation of the program "as is" is fundamental to DRNY mandate to fully investigate complaints of abuse and neglect. 42 USC § 15043 (a)(2)(B),(H).

35. According to the Defendants' school calendar the last day of classes for students in the ASC 3-5 program is June 26, 2014

36. After June 26, 2014, the students that are the subject of the abuse and neglect complaints received by DRNY will be unavailable for observation and interviews in the setting in which the allegations of abuse and neglect occurred.

37. The complaints received also include complaints of the physical environment of the program, and delay in DRNY's access may result in alterations to the environment either deliberately or in the normal course of Defendants' operations of the school.

38. DRNY's obligation to investigate these reports and ensure that children with disabilities are free of abuse and neglect will be irreparably harmed if DRNY is unable to access the ASC programs at Blue Creek Elementary prior to the end of the school year.

39. Blue Creek Elementary School is a public school in which hundreds of students, adults and parents visit the building and specific classrooms each day.

40. Upon information and belief, Defendants permit parents and other community experts into its facilities and programs for the purpose of observation. This belief is based on conversations with complainants.

41. DRNY will access Blue Creek Elementary School without any intentional disruption of the operation of the Defendants' program.

42. As of the date of this Declaration Defendants continue to refuse DRNY access to Blue

Creek Elementary School.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 18, 2014

**DISABILITY RIGHTS NEW YORK**
Attorneys for Plaintiff
Julie M. Keegan
725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861