# Exhibit 2

# DISABILITY RIGHTS NEW YORK

725 BROADWAY, SUITE 450
ALBANY, NEW YORK 12207
(518) 432-7861 (VOICE)
(518) 512-3448 (TTY)
(800) 993-8982 (TOLL FREE)
(518) 427-6561 (FAX)
MAIL@DISABILITYADVOCATES.ORG
WWW.DISABILITY-ADVOCATES.ORG

June 12, 2014

VIA Electronic and First-Class Mail

D. Joseph Corr
Superintendent of Schools
North Colonie Central School District
91 Fiddlers Lane
Latham, NY 12110

David Semo
Director of Pupil Services
Shaker High School
445 Watervliet-Shaker Road
Latham, NY 12110

Dear Superintendent Corr and Mr. Semo:

Disability Rights New York (DRNY) has received several complaints alleging that students with disabilities who currently or formerly participated in the Academic Skills Class ("ASC") programs at Blue Creek Elementary School have been, and/or continue to be, subject to abuse and neglect as defined in 45 CFR § 1386.19 and 42 CFR §51.2. I am writing to advise you that DRNY will be investigating these complaints under our authority and obligations as the designated Protection and Advocacy System for individuals with disabilities in New York State as set forth in Executive Law §558(b).

Under federal and State law, DRNY is authorized to fully investigate any complaints we receive that allege abuse or neglect occurring in any public or private entity that provides care, services, treatment and/or habilitation to person with disabilities. Specifically, a state's Protection and Advocacy System for persons with Developmental Disabilities (PADD) "shall have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred" (42 U.S.C. § 15043[2][(B]). Similarly, a state's Protection and Advocacy program for

Individuals with Mental Illness (PAIMI) and its Protection and Advocacy program for Individual Rights (PAIR) have the same authority with respect to their respective service populations. See respectively, 42 U.S.C. §10805(a)(1)(A) and 29 U.S.C. § 794e (f)(2). See also, NY Executive Law § 558(b).

As part of our effort to conduct a full investigation of the complaints we have received, I wish to access Blue Creek Elementary School. As New York's Protection and Advocacy System, we must be provided access at reasonable times to any individual with a disability in a location in which services, supports and other assistance are provided to such an individual, in order to carry out the purpose of the Protection and Advocacy System.[1] This includes access to public schools serving students with disabilities.[2] Based on this authority, I plan to visit the ASC programs on Tuesday, June 17 between the hours of 8:00 AM and 4:00 PM. I will be accompanied by Stefan Short, another DRNY attorney. We will require access to all areas and locations throughout the school available to students in the ASC programs.

Please note we reserve the right to make additional requests at any time for access to the school, staff, students, records and any other source of information necessary to complete our investigation.

Please contact me directly or through the District's counsel should you have any questions or concerns, and to discuss any specific arrangements for this visit. I can be reached at (518) 432-7861. For your convenience, I have attached copies of the authorizing statutes and regulations I have referenced in this letter. I am also willing to provide this letter and attachments to the District's counsel if provided with his or her contact information.

I look forward to working with you to resolve all concerns.

---

[1] For authority regarding persons with developmental disabilities, see, 42 U.S.C. § 15043(2)(H); 45 C.F.R. § 1386.22(f). For authority regarding persons with mental illness, see, 42 U.S.C. §10805(a)(2); 42 C.F.R. § 51.42 (b). For authority regarding persons with disabilities who are ineligible under PADD and PAIMI, see, 29 U.S.C. § 794e (f)(2), *State of Conn. Office of Protection & Advocacy for Persons with Disabilities v. Hartford Board of Education*, 464 F.3d at 240.

[2] See, 45 CFR §1386.22; *State of Conn. Office of Protection & Advocacy for Persons with Disabilities v. Hartford Board of Education*, 464 F.3d 229 (2d Cir. 2006); see also, *Disability Law Center of Alaska Inc. v. Anchorage School District*, 581 F.3d 986 (9th Cir. 2009); *Disability Rights Wisconsin v. State of Wisconsin Dept. of Public Instruction*, 463 F.3d 719 (7th Cir. 2006).

Sincerely,

*[signature]*

Julie M. Keegan
Staff Attorney

Encl:
Governor's Designation
Statutes and regulations

PROVIDING PROTECTION & ADVOCACY AND CLIENT ASSISTANCE PROGRAM SERVICES TO PERSONS WITH DISABILITIES.

## FINAL REDESIGNATION OF THE NEW YORK
## PROTECTION AND ADVOCACY SYSTEM AND CLIENT ASSISTANCE PROGRAM
## FOR PEOPLE WITH DISABILITIES

Federal law requires that a state or territory that establishes programs under the Developmental Disabilities Act (DD Act) must have in place a system to protect and advocate for the civil, human, and legal rights of people with disabilities, 42 U.S.C. § 15041 et. seq. (P&A system). Similarly, the Rehabilitation Act of 1973 mandates that a state must establish a client assistance program (CAP) to assist individuals who apply for or receive vocational rehabilitation or independent living services under the act, 29 U.S.C. § 732 (CAP).

The designation may be removed (redesignated) only for good cause. Within 30 days after the redesignation becomes effective, the Governor must submit an assurance that the newly designated Protection and Advocacy agency meets the requirements of the statute and the regulations.

The Commission on Quality of Care and Advocacy for Persons with Disabilities ("CQCAPD"), a state agency established under Article 45 of the Mental Hygiene Law, is designated as both the P&A system and the CAP. CQCAPD is located at 401 State Street, Schenectady, New York 12305.

As the P&A system, CQCAPD provides advocacy to residents of New York State who have a physical or mental condition that substantially limits at least one major life activity and who fall within the agency's priorities and case selection criteria as determined through the priority setting process each year. CQCAPD serves individuals with a wide range of disabilities – including, but not limited to, those with cognitive, mental, sensory, and physical disabilities – by protecting against abuse and neglect; advocating for civil rights; and ensuring accountability in access to and the delivery of services to persons with disabilities in health care, education, employment, housing and transportation, and within the juvenile and criminal justice systems. CQCAPD maintains a presence in facilities that provide care for and services to people with disabilities, where they monitor, investigate and attempt to remedy adverse conditions.

As the CAP, CQCAPD provides advocacy to people who are applying for or receiving vocational rehabilitation services or services from an independent living center, as well as providing information on rights under Title I of the Americans with Disabilities Act.

In addition to the Protection and Advocacy for Persons with Developmental Disabilities (PADD) program and the CAP, CQCAPD operates federally-funded P&A programs under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §10801 (PAIMI); the Rehabilitation Act of 1973, 29 U.S.C. § 794e (PAIR); the Ticket to Work Act for Beneficiaries of Social Security Disability, 42 U.S.C. § 1320b-21 (PABSS); the Assistive Technology Act of 1998, 29 U.S.C. § 3004 (PAAT); the Help America Vote Act of 2002, 42 U.S.C. § 15461 (PAVA); and the Traumatic Brain Injury Act of 2008, 42 U.S.C. § 300d-53 (PATBI).

The goals of the P&A system and CAP were developed in collaboration with people with disabilities and other interested parties. They include advocacy in six broad areas:

- Protection from abuse, harm and neglect;
- Protection of the educational rights of children and adults by ensuring the provision of disability related services and vocational rehabilitation, consistent with state and federal laws;
- Effective life transitions and supports that promote community inclusion and prevent institutionalization;
- Full range of services for community integration and access to quality, inclusive community living choices, integrated and competitive employment and adult education, voting, access to assistive technology and public and private health care and health care insurance; and
- Provision of information, referrals, outreach and education that promote individual rights, remedies, policy development and systems change.

More detailed information can be found at http://cqc.ny.gov/advocacy/protection-advocacy-programs.

On February 15, 2013, the Governor issued a Notice of Intent to Redesignate the Protection and Advocacy System and Client Advocacy Program. In issuing this Notice, the Governor determined that it is in the interest of New Yorkers with disabilities to redesignate the P&A and CAP.

The Governor's Office received public comment on this proposed redesignation until April 5, 2013, and conducted a public hearing on the proposed redesignation on April 9, 2013. The public hearing took place at Empire State Plaza, Albany, New York, with regional videoconference locations in Binghamton, Syracuse, Rochester, Thiells, Commack, New York City, Tupper Lake, and West Seneca, New York.

Having received public comment and conducted a public hearing, the Governor has determined that he will designate a not-for-profit corporation, Disability Advocates, Inc. (DAI), as the P&A and CAP, effective June 1, 2013. DAI has been properly established as a not-for-profit corporation under the laws of this state, has obtained the approval of the federal Internal Revenue Service to operate as a tax exempt charity under section 501(c)(3) of the Internal Revenue Code, and is registered as a charitable corporation with the Office of the Attorney General of the State of New York.

Redesignation:

- supports a more coordinated and consistent statewide P&A/CAP system;
- enhances protection and advocacy for persons with disabilities and their families;
- eliminates any perceived conflict of interest associated with the current placement of the P&A and CAP in state government;

- allows the P&A and CAP to be more flexible with current resources and to explore financial resources for which those programs do not qualify;
- allows the P&A and CAP greater independence in personnel and other administrative matters, and facilitates compliance with federal requirements in these areas; and
- is consistent with the provisions of the Protection of People with Special Needs Act.

DAI will do business as Disability Rights New York (DRNY) and will operate all of the P&A/CAP programs authorized under federal law. DRNY will continue to serve existing clients and cases of the current P&A system or refer them to other sources of legal advocacy as appropriate, without disruption.

*[signature]*
Larry Schwartz, Secretary to the Governor

5/7/13
Date

§ 1386.19 Definitions., 45 C.F.R. § 1386.19

Code of Federal Regulations
  Title 45. Public Welfare
    Subtitle B. Regulations Relating to Public Welfare
      Chapter XIII. Office of Human Development Services, Department of Health and Human Services
        Subchapter I. The Administration on Developmental Disabilities, Developmental Disabilities Program
          Part 1386. Formula Grant Programs (Refs & Annos)
            Subpart B. State System for Protection and Advocacy of the Rights of Individuals with Developmental Disabilities (Refs & Annos)

45 C.F.R. § 1386.19

§ 1386.19 Definitions.

Currentness

As used in §§ 1386.20, 1386.21, 1386.22 and 1386.25 of this part the following definitions apply:

Abuse means any act or failure to act which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with developmental disabilities, and includes such acts as: Verbal, nonverbal, mental and emotional harassment; rape or sexual assault; striking; the use of excessive force when placing such an individual in bodily restraints; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations or any other practice which is likely to cause immediate physical or psychological harm or result in long term harm if such practices continue.

Complaint includes, but is not limited to any report or communication, whether formal or informal, written or oral, received by the system including media accounts, newspaper articles, telephone calls (including anonymous calls), from any source alleging abuse or neglect of an individual with a developmental disability.

Designating Official means the Governor or other State official, who is empowered by the Governor or State legislature to designate the State official or public or private agency to be accountable for the proper use of funds by and conduct of the State Protection and Advocacy agency.

Facility includes any setting that provides care, treatment, services and habilitation, even if only "as needed" or under a contractual arrangement. Facilities include, but are not limited to the following:

Community living arrangements (e.g., group homes, board and care homes, individual residences and apartments), day programs, juvenile detention centers, hospitals, nursing homes, homeless shelters, jails and prisons.

Full Investigation means access to facilities, clients and records authorized under these regulations, that is necessary for a protection and advocacy (P&A) system to make a determination about whether alleged or suspected instances of abuse and neglect are taking place or have taken place. Full investigations may be conducted independently or in cooperation with other agencies authorized to conduct similar investigations.

Legal Guardian, conservator and legal representative all mean an individual appointed and regularly reviewed by a State court or agency empowered under State law to appoint and review such officers and having authority to make all decisions on behalf of individuals with developmental disabilities. It does not include persons acting only as a representative payee, person acting only to handle financial payments, attorneys or other persons acting on behalf of an individual with developmental disabilities only in individual legal matters, or officials responsible for the provision of treatment or habilitation services to an individual with developmental disabilities or their designees.

§ 1386.19 Definitions., 45 C.F.R. § 1386.19

==Neglect means a negligent act or omission by an individual responsible for providing treatment or habilitation services which caused or may have caused injury or death to an individual with developmental disabilities or which placed an individual with developmental disabilities at risk of injury or death, and includes acts or omissions such as failure to: establish or carry out an appropriate individual program plan or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care to an individual with developmental disabilities; provide a safe environment which also includes failure to maintain adequate numbers of trained staff.==

Probable cause means a reasonable ground for belief that an individual with developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

Credits
[61 FR 51155, Sept. 30, 1996]

SOURCE: 49 FR 11779, March 27, 1984; 52 FR 44846, Nov. 20, 1987; 54 FR 47985, Nov. 20, 1989; 61 FR 51155, Sept. 30, 1996, unless otherwise noted.

AUTHORITY: 42 U.S.C. 6000 et seq.

Notes of Decisions (7)

Current through June 5, 2014; 79 FR 32632

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
    Title 45. Public Welfare
        Subtitle B. Regulations Relating to Public Welfare
            Chapter XIII. Office of Human Development Services, Department of Health and Human Services
                Subchapter I. The Administration on Developmental Disabilities, Developmental Disabilities Program
                    Part 1386. Formula Grant Programs (Refs & Annos)
                        Subpart B. State System for Protection and Advocacy of the Rights of Individuals with Developmental Disabilities (Refs & Annos)

45 C.F.R. § 1386.22

§ 1386.22 Access to records, facilities and individuals with developmental disabilities.

Currentness

(a) Access to records--A protection and advocacy (P&A) system shall have access to the records of any of the following individuals with developmental disabilities:

(1) An individual who is a client of the system, including any person who has requested assistance from the system, if authorized by that individual or their legal guardian, conservator or other legal representative.

(2) An individual, including an individual who has died or whose whereabouts is unknown, to whom all of the following conditions apply:

(i) The individual, due to his or her mental or physical condition is unable to authorize the system to have access;

(ii) The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and

(iii) With respect to whom a complaint has been received by the system or the system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse or neglect.

(3) An individual who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom the system has determined that there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, whenever all the following conditions exist:

(i) The system has made a good faith effort to contact the representative upon receipt of the representative's name and address;

(ii) The system has offered assistance to the representative to resolve the situation; and

    (iii) The representative has failed or refused to act on behalf of the individual.

(b) Individual records to which P&A systems must have access under section 142(A)(2)(I) (whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records) shall include, but shall not be limited to:

    (1) Records prepared or received in the course of providing intake, assessment, evaluation, education, training and other supportive services, including medical records, financial records, and monitoring and other reports prepared or received by a member of the staff of a facility that is providing care or treatment;

    (2) Reports prepared by an agency charged with investigating incidents of abuse or neglect, injury or death occurring at a facility or while the individual with a developmental disability is under the care of a member of the staff of a facility, or by or for such facility, that describe any or all of the following:

    (i) Abuse, neglect, injury, death;

    (ii) The steps taken to investigate the incidents;

    (iii) Reports and records, including personnel records, prepared or maintained by the facility in connection with such reports of incidents; or,

    (iv) Supporting information that was relied upon in creating a report, including all information and records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings; and

    (3) Discharge planning records.

(c) Information in the possession of a facility which must be available to P&A systems in investigating instances of abuse and neglect under section 142(a)(2)(B) (whether written or in another medium, draft or final, including hand written notes, electronic files, photographs or video or audio tape records) shall include, but not be limited to:

    (1) Information in reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for a facility by its staff, contractors or related entities, except that nothing in this section is intended to preempt State law protection records produced by medical care evaluation or peer review committees.

    (2) Information in professional, performance, building or other safety standards, demographic and statistical information relating to a facility.

(d) A system shall be permitted to inspect and copy information and records, subject to a reasonable charge to offset duplicating costs.

(e) The client's record is the property of the Protection and Advocacy System which must protect it from loss, damage, tampering, or use by unauthorized individuals. The Protection and Advocacy System must:

(1) Keep confidential all information contained in a client's records, which includes, but is not limited to, information contained in an automated data bank. This regulation does not limit access by parents or legal guardians of minors unless prohibited by State or Federal law, court order or the rules of attorney-client privilege;

(2) Have written policies governing access to, storage of, duplication of, and release of information from the client's record; and

(3) Be authorized to keep confidential the names and identity of individuals who report incidents of abuse and neglect and individuals who furnish information that forms the basis for a determination that probable cause exists.

(f) Access to Facilities and Individuals with Developmental Disabilities--A system shall have reasonable unaccompanied access to public and private facilities which provide services, supports, and other assistance for individuals with developmental disabilities in the State when necessary to conduct a full investigation of an incident of abuse or neglect under section 142(a)(2)(B) of the Act. This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation.

(g) Under section 142(a)(2)(H) of the Act, the system and all of its authorized agents shall have unaccompanied access to all residents of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, for the purpose of:

(1) Providing information and training on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system, including the name, address, and telephone number of the system and other information and training about individual rights; and

(2) Monitoring compliance with respect to the rights and safety of service recipients.

(h) Unaccompanied access to residents of a facility shall include the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person.

(i) If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities.

**Credits**
[61 FR 51158, Sept. 30, 1996]

SOURCE: 49 FR 11779, March 27, 1984; 52 FR 44846, Nov. 20, 1987; 54 FR 47985, Nov. 20, 1989; 61 FR 51155, Sept. 30, 1996, unless otherwise noted.

§ 1386.22 Access to records, facilities and individuals with..., 45 C.F.R. § 1386.22

AUTHORITY: 42 U.S.C. 6000 et seq.

Notes of Decisions (33)

Current through May 29, 2014; 79 FR 31014.

End of Document © 2014 Thomson Reuters. No claim to original U.S. Government Works.