§ 15043. System required, 42 USCA § 15043

United States Code Annotated
 Title 42. The Public Health and Welfare
  Chapter 144. Developmental Disabilities Assistance and Bill of Rights
   Subchapter I. Programs for Individuals with Developmental Disabilities
    Part C. Protection and Advocacy of Individual Rights

42 U.S.C.A. § 15043

§ 15043. System required

Effective: October 25, 2004

Currentness

(a) System required

In order for a State to receive an allotment under part B of this subchapter or this part--

   (1) the State shall have in effect a system to protect and advocate the rights of individuals with developmental disabilities;

   (2) such system shall--

      (A) have the authority to--

         (i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial minority groups; and

         (ii) provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities;

      (B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

      (C) on an annual basis, develop, submit to the Secretary, and take action with regard to goals (each of which is related to 1 or more areas of emphasis) and priorities, developed through data driven strategic planning, for the system's activities;

      (D) on an annual basis, provide to the public, including individuals with developmental disabilities attributable to either physical impairment, mental impairment, or a combination of physical and mental impairment, and their representatives, and as appropriate, non-State agency representatives of the State Councils on Developmental Disabilities, and Centers, in the State, an opportunity to comment on--

         (i) the goals and priorities established by the system and the rationale for the establishment of such goals; and

(ii) the activities of the system, including the coordination of services with the entities carrying out advocacy programs under the Rehabilitation Act of 1973 (29 U.S.C. 701 et seq.), the Older Americans Act of 1965 (42 U.S.C. 3001 et seq.), and the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (42 U.S.C. 10801 et seq.), and with entities carrying out other related programs, including the parent training and information centers funded under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.), and activities authorized under section 3003 or 3004 of Title 29;

(E) establish a grievance procedure for clients or prospective clients of the system to ensure that individuals with developmental disabilities have full access to services of the system;

(F) not be administered by the State Council on Developmental Disabilities;

(G) be independent of any agency that provides treatment, services, or habilitation to individuals with developmental disabilities;

(H) have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of this part;

(I) have access to all records of--

(i) any individual with a developmental disability who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;

(ii) any individual with a developmental disability, in a situation in which--

(I) the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;

(II) the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and

(III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect; and

(iii) any individual with a developmental disability, in a situation in which--

(I) the individual has a legal guardian, conservator, or other legal representative;

(II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has

§ 15043. System required, 42 USCA § 15043

been subject to abuse or neglect;

(III) such representative has been contacted by such system, upon receipt of the name and address of such representative;

(IV) such system has offered assistance to such representative to resolve the situation; and

(V) such representative has failed or refused to act on behalf of the individual;

(J)(i) have access to the records of individuals described in subparagraphs (B) and (I), and other records that are relevant to conducting an investigation, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved; and

(ii) have immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability--

(I) if the system determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy; or

(II) in any case of death of an individual with a developmental disability;

(K) hire and maintain sufficient numbers and types of staff (qualified by training and experience) to carry out such system's functions, except that the State involved shall not apply hiring freezes, reductions in force, prohibitions on travel, or other policies to the staff of the system, to the extent that such policies would impact the staff or functions of the system funded with Federal funds or would prevent the system from carrying out the functions of the system under this part;

(L) have the authority to educate policymakers; and

(M) provide assurances to the Secretary that funds allotted to the State under section 15042 of this title will be used to supplement, and not supplant, the non-Federal funds that would otherwise be made available for the purposes for which the allotted funds are provided;

(3) to the extent that information is available, the State shall provide to the system--

(A) a copy of each independent review, pursuant to section 1396a(a)(30)(C) of this title, of an Intermediate Care Facility (Mental Retardation) within the State, not later than 30 days after the availability of such a review; and

(B) information about the adequacy of health care and other services, supports, and assistance that individuals with developmental disabilities who are served through home and community-based waivers (authorized under section 1396n(c) of this title) receive; and

§ 15043. System required, 42 USCA § 15043

    (4) the agency implementing the system shall not be redesignated unless--

        (A) there is good cause for the redesignation;

        (B) the State has given the agency notice of the intention to make such redesignation, including notice regarding the good cause for such redesignation, and given the agency an opportunity to respond to the assertion that good cause has been shown;

        (C) the State has given timely notice and an opportunity for public comment in an accessible format to individuals with developmental disabilities or their representatives; and

        (D) the system has an opportunity to appeal the redesignation to the Secretary, on the basis that the redesignation was not for good cause.

(b) American Indian consortium

Upon application to the Secretary, an American Indian consortium established to provide protection and advocacy services under this part, shall receive funding pursuant to section 15042(a)(6) of this title to provide the services. Such consortium shall be considered to be a system for purposes of this part and shall coordinate the services with other systems serving the same geographic area. The tribal council that designates the consortium shall carry out the responsibilities and exercise the authorities specified for a State in this part, with regard to the consortium.

(c) Record

In this section, the term "record" includes--

    (1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities;

    (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and

    (3) a discharge planning record.

**CREDIT(S)**
(Pub.L. 106-402, Title I, § 143, Oct. 30, 2000, 114 Stat. 1714, as amended Pub.L. 108-364, § 3(a)(3), Oct. 25, 2004, 118 Stat. 1736.)

Notes of Decisions (24)

§ 15043. System required, 42 USCA § 15043

42 U.S.C.A. § 15043, 42 USCA § 15043
Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

End of Document © 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 51.2 Definitions., 42 C.F.R. § 51.2

Code of Federal Regulations
  Title 42. Public Health
    Chapter I. Public Health Service, Department of Health and Human Services (Refs & Annos)
      Subchapter D. Grants
        Part 51. Requirements Applicable to the Protection and Advocacy for Individuals with Mental Illness Program (Refs & Annos)

42 C.F.R. § 51.2

§ 51.2 Definitions.

Currentness

In addition to the definitions in section 102 of the Act, as amended, the following definitions apply:

Abuse means any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with mental illness, and includes but is not limited to acts such as: rape or sexual assault; striking; the use of excessive force when placing an individual with mental illness in bodily restraints; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations; verbal, nonverbal, mental and emotional harassment; and any other practice which is likely to cause immediate physical or psychological harm or result in long-term harm if such practices continue.

Act means the Protection and Advocacy for Mentally Ill Individuals Act of 1986, as amended, also referred to as Protection and Advocacy for Individuals with Mental Illness Act.

ADD means the Administration on Developmental Disabilities within the Administration for Children and Families, Department of Health and Human Services.

Care or Treatment means services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only "as needed" or under a contractual arrangement.

Center or CMHS means the Center for Mental Health Services, a component of the Substance Abuse and Mental Health Services Administration.

Complaint includes, but is not limited to any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with mental illness.

Department or HHS means the U.S. Department of Health and Human Services.

Designated Official is the State official or public or private entity empowered by the Governor or State legislature to be accountable for the proper use of funds by the P&A system.

Director means the Director of the Center for Mental Health Services, Substance Abuse and Mental Health Services Administration, or his or her designee.

Facility includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care

§ 51.2 Definitions., 42 C.F.R. § 51.2

homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

Fiscal Year or FY means the Federal fiscal year (October 1–September 30) unless otherwise specified.

Full Investigation is based upon a complaint or a determination of probable cause and means the access to facilities, clients and records authorized under this part that is necessary for a P&A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place. Full investigations may be conducted independently or in cooperation with other agencies authorized to conduct similar investigations.

Governor means the chief executive officer of the State, Territory or the District of Columbia, or his or her designee, who has been formally designated to act for the Governor in carrying out the requirements of the Act and this part.

Individual with Mental Illness means an individual who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State and

(1) Who is an inpatient or resident in a facility rendering care or treatment, even if the whereabouts of such inpatient or resident is unknown;

(2) Who is in the process of being admitted to a facility rendering care or treatment, including persons being transported to such a facility, or

(3) Who is involuntarily confined in a detention facility, jail or prison.

Legal Guardian, Conservator, and Legal Representative all mean an individual whose appointment is made and regularly reviewed by a State court or agency empowered under State law to appoint and review such officers, and having authority to consent to health/mental health care or treatment of an individual with mental illness. It does not include persons acting only as a representative payee, persons acting only to handle financial payments, attorneys or persons acting on behalf of an individual with mental illness only in individual legal matters, or officials responsible for the provision of health or mental health services to an individual with mental illness, or their designees.

Neglect means a negligent act or omission by an individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to an individual with mental illness or which placed an individual with mental illness at risk of injury or death, and includes, but is not limited to, acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care; and the failure to provide a safe environment which also includes failure to maintain adequate numbers of appropriately trained staff.

Private Entity means a nonprofit or for-profit corporation, partnership or other nongovernmental organization.

Probable cause means reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

Program means activities carried out by the P&A system and operating as part of a P&A system to meet the requirements of the Act.

Public Entity means an organizational unit of a State or local government or a quasi-governmental entity with one or more governmental powers.

System means the organization or agency designated in a State to administer and operate a protection and advocacy program under Part C of the Developmental Disabilities Assistance and Bill of Rights Act (42 U.S.C. 6041, 6042) and thereby eligible to administer a program for individuals with mental illness.

§ 51.2 Definitions., 42 C.F.R. § 51.2

SOURCE: 62 FR 53564, Oct. 15, 1997, unless otherwise noted.

AUTHORITY: 42 U.S.C. 10801, et seq.

Notes of Decisions (15)

Current through June 5, 2014; 79 FR 32632

End of Document © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
  Title 42. Public Health
    Chapter I. Public Health Service, Department of Health and Human Services (Refs & Annos)
      Subchapter D. Grants
        Part 51. Requirements Applicable to the Protection and Advocacy for Individuals with Mental Illness Program (Refs & Annos)
          Subpart D. Access to Records, Facilities and Individuals

42 C.F.R. § 51.42

§ 51.42 Access to facilities and residents.

Currentness

(a) Access to facilities and residents shall be extended to all authorized agents of a P&A system.

(b) A P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. Such access shall be afforded, upon request, by the P&A system when:

   (1) An incident is reported or a complaint is made to the P&A system;

   (2) The P&A system determines there is probable cause to believe that an incident has or may have occurred; or

   (3) The P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness.

(c) In addition to access as prescribed in paragraph (b) of this section, a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. This access is for the purpose of:

   (1) Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.

   (2) Monitoring compliance with respect to the rights and safety of residents; and

§ 51.42 Access to facilities and residents., 42 C.F.R. § 51.42

(3) Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

(d) Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have legal guardians or conservators.

(e) The right of access specified in paragraph (c) of this section shall apply despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators. The system shall make every effort to ensure that the parents of minors or guardians of individuals in the care of a facility are informed that the system will be monitoring activities at the facility and may in the course of such monitoring have access to the minor or adult with a legal guardian. The system shall take no formal action on behalf of individuals with legal guardians or conservators, or initiate a formal attorney/client or advocate/client relationship without appropriate consent, except in emergency situations as described in § 51.41(b)(3).

(f) A P&A system providing representation to individuals with mental illness in Federal facilities shall have all the rights and authority accorded other representatives of residents of such facilities pursuant to State and Federal laws.

SOURCE: 62 FR 53564, Oct. 15, 1997, unless otherwise noted.

AUTHORITY: 42 U.S.C. 10801, et seq.

Notes of Decisions (24)

Current through June 5, 2014; 79 FR 32632

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 10805. System requirements, 42 USCA § 10805

United States Code Annotated
 Title 42. The Public Health and Welfare
  Chapter 114. Protection and Advocacy for Mentally Ill Individuals (Refs & Annos)
   Subchapter I. Protection and Advocacy Systems
    Part A. Establishment of Systems

42 U.S.C.A. § 10805

§ 10805. System requirements

Effective: April 30, 1997

Currentness

(a) Authority; independent status; access to facilities and records; advisory council; annual report; grievance procedure

A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall--

   (1) have the authority to--

      (A) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

      (B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; and

      (C) pursue administrative, legal, and other remedies on behalf of an individual who--

         (i) was a¹ individual with mental illness; and

         (ii) is a resident of the State,

            but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment;

   (2) be independent of any agency in the State which provides treatment or services (other than advocacy services) to individuals with mental illness;

   (3) have access to facilities in the State providing care or treatment;

   (4) in accordance with section 10806 of this title, have access to all records of--

§ 10805. System requirements, 42 USCA § 10805

(A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;

(B) any individual (including an individual who has died or whose whereabouts are unknown)--

(i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;

(ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

(iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect; and

(C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever--

(i) such representative has been contacted by such system upon receipt of the name and address of such representative;

(ii) such system has offered assistance to such representative to resolve the situation; and

(iii) such representative has failed or refused to act on behalf of the individual;

(5) have an arrangement with the Secretary and the agency of the State which administers the State plan under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.] for the furnishing of the information required by subsection (b) of this section;

(6) establish an advisory council--

(A) which will advise the system on policies and priorities to be carried out in protecting and advocating the rights of individuals with mental illness;

(B) which shall include attorneys, mental health professionals, individuals from the public who are knowledgeable about mental illness, a provider of mental health services, individuals who have received or are receiving mental health services, and family members of such individuals, and at least 60 percent the membership of which shall be comprised of individuals who have received or are receiving mental health services or who are family members of such individuals; and

(C) which shall be chaired by an individual who has received or is receiving mental health services or who is a family member of such an individual;

§ 10805. System requirements, 42 USCA § 10805

(7) on January 1, 1987, and January 1 of each succeeding year, prepare and transmit to the Secretary and the head of the State mental health agency of the State in which the system is located a report describing the activities, accomplishments, and expenditures of the system during the most recently completed fiscal year, including a section prepared by the advisory council that describes the activities of the council and its assessment of the operations of the system;

(8) on an annual basis, provide the public with an opportunity to comment on the priorities established by, and the activities of, the system;

(9) establish a grievance procedure for clients or prospective clients of the system to assure that individuals with mental illness have full access to the services of the system and for individuals who have received or are receiving mental health services, family members of such individuals with mental illness, or representatives of such individuals or family members to assure that the eligible system is operating in compliance with the provisions of this subchapter and subchapter III of this chapter; and

(10) not use allotments provided to a system in a manner inconsistent with section 14404 of this title.

(b) Annual survey report; plan of corrections

The Secretary and the agency of a State which administers its State plan under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.] shall provide the eligible system of the State with a copy of each annual survey report and plan of corrections for cited deficiencies made pursuant to titles XVIII and XIX of the Social Security Act [42 U.S.C.A. §§ 1395 et seq. and 1396 et seq.] with respect to any facility rendering care or treatment to individuals with mental illness in the State in which such system is located. A report or plan shall be made available within 30 days after the completion of the report or plan.

(c) Governing authority

(1)(A) Each system established in a State, through allotments received under section 10803 of this title, to protect and advocate the rights of individuals with mental illness shall have a governing authority.

(B) In States in which the governing authority is organized as a private non-profit entity with a multi-member governing board, or a public system with a multi-member governing board, such governing board shall be selected according to the policies and procedures of the system. The governing board shall be composed of--

(i) members (to be selected no later than October 1, 1990) who broadly represent or are knowledgeable about the needs of the clients served by the system; and

(ii) in the case of a governing authority organized as a private non-profit entity, members who broadly represent or are knowledgeable about the needs of the clients served by the system including the chairperson of the advisory council of such system.

As used in this subparagraph, the term "members who broadly represent or are knowledgeable about the needs of the clients served by the system" shall be construed to include individuals who have received or are receiving mental health services and family members of such individuals.

§ 10805. System requirements, 42 USCA § 10805

**(2)** The governing authority established under paragraph (1) shall--

**(A)** be responsible for the planning, design, implementation, and functioning of the system; and

**(B)** consistent with subparagraph (A), jointly develop the annual priorities of the system with the advisory council.

**CREDIT(S)**
(Pub.L. 99-319, Title I, § 105, May 23, 1986, 100 Stat. 480; Pub.L. 100-509, §§ 4 to 6(a), 7(c), Oct. 20, 1988, 102 Stat. 2543 to 2545; Pub.L. 102-173, §§ 6, 10, Nov. 27, 1991, 105 Stat. 1218, 1219; Pub.L. 105-12, § 9(m), Apr. 30, 1997, 111 Stat. 28.)

Notes of Decisions (54)

Footnotes

1
    So in original. Probably should be "an".

42 U.S.C.A. § 10805, 42 USCA § 10805
Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

End of Document © 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

United States Code Annotated
 Title 29. Labor
  Chapter 16. Vocational Rehabilitation and Other Rehabilitation Services (Refs & Annos)
   Subchapter V. Rights and Advocacy (Refs & Annos)

29 U.S.C.A. § 794e

§ 794e. Protection and advocacy of individual rights

Effective: October 30, 2000

Currentness

(a) Purpose and construction

(1) Purpose

The purpose of this section is to support a system in each State to protect the legal and human rights of individuals with disabilities who--

(A) need services that are beyond the scope of services authorized to be provided by the client assistance program under section 732 of this title; and

(B)(i) are ineligible for protection and advocacy programs under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C.A. § 15041 et seq.] because the individuals do not have a developmental disability, as defined in section 102 of such Act [42 U.S.C. 15002]; and

(ii) are ineligible for services under the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (42 U.S.C. 10801 et seq.) because the individuals are not individuals with mental illness, as defined in section 102 of such Act (42 U.S.C. 10802).

(2) Construction

This section shall not be construed to require the provision of protection and advocacy services that can be provided under the Assistive Technology Act of 1998.

(b) Appropriations less than $5,500,000

For any fiscal year in which the amount appropriated to carry out this section is less than $5,500,000, the Commissioner may make grants from such amount to eligible systems within States to plan for, develop outreach strategies for, and carry out protection and advocacy programs authorized under this section for individuals with disabilities who meet the requirements of subparagraphs (A) and (B) of subsection (a)(1) of this section.

(c) Appropriations of $5,500,000 or more

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

(1) Reservations

(A) Technical assistance

For any fiscal year in which the amount appropriated to carry out this section equals or exceeds $5,500,000, the Commissioner shall set aside not less than 1.8 percent and not more than 2.2 percent of the amount to provide training and technical assistance to the systems established under this section.

(B) Grant for the eligible system serving the American Indian consortium

For any fiscal year in which the amount appropriated to carry out this section equals or exceeds $10,500,000, the Commissioner shall reserve a portion, and use the portion to make a grant for the eligible system serving the American Indian consortium. The Commission shall make the grant in an amount of not less than $50,000 for the fiscal year.

(2) Allotments

For any such fiscal year, after the reservations required by paragraph (1) have been made, the Commissioner shall make allotments from the remainder of such amount in accordance with paragraph (3) to eligible systems within States to enable such systems to carry out protection and advocacy programs authorized under this section for individuals referred to in subsection (b) of this section.

(3) Systems within States

(A) Population basis

Except as provided in subparagraph (B), from such remainder for each such fiscal year, the Commissioner shall make an allotment to the eligible system within a State of an amount bearing the same ratio to such remainder as the population of the State bears to the population of all States.

(B) Minimums

Subject to the availability of appropriations to carry out this section, and except as provided in paragraph (4), the allotment to any system under subparagraph (A) shall be not less than $100,000 or ⅓ of 1 percent of the remainder for the fiscal year for which the allotment is made, whichever is greater, and the allotment to any system under this section for any fiscal year that is less than $100,000 or ⅓ of 1 percent of such remainder shall be increased to the greater of the two amounts.

(4) Systems within other jurisdictions

(A) In general

For the purposes of paragraph (3)(B), Guam, American Samoa, the United States Virgin Islands, and the Commonwealth of the Northern Mariana Islands shall not be considered to be States.

(B) Allotment

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

The eligible system within a jurisdiction described in subparagraph (A) shall be allotted under paragraph (3)(A) not less than $50,000 for the fiscal year for which the allotment is made.

(5) Adjustment for inflation

For any fiscal year, beginning in fiscal year 1999, in which the total amount appropriated to carry out this section exceeds the total amount appropriated to carry out this section for the preceding fiscal year, the Commissioner shall increase each of the minimum grants or allotments under paragraphs (1)(B), (3)(B), and (4)(B) by a percentage that shall not exceed the percentage increase in the total amount appropriated to carry out this section between the preceding fiscal year and the fiscal year involved.

(d) Proportional reduction

To provide minimum allotments to systems within States (as increased under subsection (c)(5) of this section) under subsection (c)(3)(B) of this section, or to provide minimum allotments to systems within States (as increased under subsection (c)(5) of this section) under subsection (c)(4)(B) of this section, the Commissioner shall proportionately reduce the allotments of the remaining systems within States under subsection (c)(3) of this section, with such adjustments as may be necessary to prevent the allotment of any such remaining system within a State from being reduced to less than the minimum allotment for a system within a State (as increased under subsection (c)(5) of this section) under subsection (c)(3)(B) of this section, or the minimum allotment for a State (as increased under subsection (c)(5) of this section) under subsection (c)(4)(B) of this section, as appropriate.

(e) Reallotment

Whenever the Commissioner determines that any amount of an allotment to a system within a State for any fiscal year described in subsection (c)(1) of this section will not be expended by such system in carrying out the provisions of this section, the Commissioner shall make such amount available for carrying out the provisions of this section to one or more of the systems that the Commissioner determines will be able to use additional amounts during such year for carrying out such provisions. Any amount made available to a system for any fiscal year pursuant to the preceding sentence shall, for the purposes of this section, be regarded as an increase in the allotment of the system (as determined under the preceding provisions of this section) for such year.

(f) Application

In order to receive assistance under this section, an eligible system shall submit an application to the Commissioner, at such time, in such form and manner, and containing such information and assurances as the Commissioner determines necessary to meet the requirements of this section, including assurances that the eligible system will--

(1) have in effect a system to protect and advocate the rights of individuals with disabilities;

(2) have the same general authorities, including access to records and program income, as are set forth in subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C.A. § 15041 et seq.];

(3) have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State or the American Indian consortium who are individuals described in subsection (a)(1) of this section;

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

**(4)** provide information on and make referrals to programs and services addressing the needs of individuals with disabilities in the State or the American Indian consortium;

**(5)** develop a statement of objectives and priorities on an annual basis, and provide to the public, including individuals with disabilities and, as appropriate, the individuals' representatives, an opportunity to comment on the objectives and priorities established by, and activities of, the system including--

**(A)** the objectives and priorities for the activities of the system for each year and the rationale for the establishment of such objectives and priorities; and

**(B)** the coordination of programs provided through the system under this section with the advocacy programs of the client assistance program under section 732 of this title, the State long-term care ombudsman program established under the Older Americans Act of 1965 (42 U.S.C. 3001 et seq.), the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C.A. § 15001 et seq.], and the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (42 U.S.C. 10801 et seq.);

**(6)** establish a grievance procedure for clients or prospective clients of the system to ensure that individuals with disabilities are afforded equal opportunity to access the services of the system; and

**(7)** provide assurances to the Commissioner that funds made available under this section will be used to supplement and not supplant the non-Federal funds that would otherwise be made available for the purpose for which Federal funds are provided.

(g) Carryover and direct payment

(1) Direct payment

Notwithstanding any other provision of law, the Commissioner shall pay directly to any system that complies with the provisions of this section, the amount of the allotment of the State or the grant for the eligible system that serves the American Indian consortium involved under this section, unless the State or American Indian consortium provides otherwise.

(2) Carryover

Any amount paid to an eligible system that serves a State or American Indian consortium for a fiscal year that remains unobligated at the end of such year shall remain available to such system that serves the State or American Indian consortium for obligation during the next fiscal year for the purposes for which such amount was paid.

(h) Limitation on disclosure requirements

For purposes of any audit, report, or evaluation of the performance of the program established under this section, the Commissioner shall not require such a program to disclose the identity of, or any other personally identifiable information related to, any individual requesting assistance under such program.

(i) Administrative cost

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

In any State in which an eligible system is located within a State agency, a State may use a portion of any allotment under subsection (c) of this section for the cost of the administration of the system required by this section. Such portion may not exceed 5 percent of the allotment.

(j) Delegation

The Commissioner may delegate the administration of this program to the Commissioner of the Administration on Developmental Disabilities within the Department of Health and Human Services.

(k) Report

The Commissioner shall annually prepare and submit to the Committee on Education and the Workforce of the House of Representatives and the Committee on Labor and Human Resources of the Senate a report describing the types of services and activities being undertaken by programs funded under this section, the total number of individuals served under this section, the types of disabilities represented by such individuals, and the types of issues being addressed on behalf of such individuals.

(l) Authorization of appropriations

There are authorized to be appropriated to carry out this section such sums as may be necessary for each of the fiscal years 1999 through 2003.

(m) Definitions

As used in this section:

(1) Eligible system

The term "eligible system" means a protection and advocacy system that is established under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C.A. § 15041 et seq.] and that meets the requirements of subsection (f) of this section.

(2) American Indian consortium

The term "American Indian consortium" means a consortium established as described in section 142 of the Developmental Disabilities Assistance and Bill of Rights Act (42 U.S.C. 6042).

**CREDIT(S)**
(Pub.L. 93-112, Title V, § 509, as added Pub.L. 102-569, Title V, § 510(a), Oct. 29, 1992, 106 Stat. 4430; amended Pub.L. 103-73, Title I, § 112(c), Aug. 11, 1993, 107 Stat. 727; Pub.L. 105-12, § 9(n), Apr. 30, 1997, 111 Stat. 28; Pub.L. 105-220, Title IV, § 408(c), Aug. 7, 1998, 112 Stat. 1206; Pub.L. 105-394, Title IV, § 402(c), Nov. 13, 1998, 112 Stat. 3662; Pub.L. 106-402, Title IV, § 401(b)(3)(C), (D), Oct. 30, 2000, 114 Stat. 1738.)

Notes of Decisions (9)

§ 794e. Protection and advocacy of individual rights, 29 USCA § 794e

29 U.S.C.A. § 794e, 29 USCA § 794e
Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.