UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DISABILITY RIGHTS NEW YORK,

                 *Plaintiffs,*
     -against-                  **Supplemental Memorandum Re: New Regulations Interpreting DD Act in Support of Plaintiff's Motion for Summary Judgment**

NORTH COLONIE BOARD OF EDUCATION,     Docket No: 1:14-cv-00744
North Colonie Central Schools, and
Mr. D. Joseph Corr, in his official capacity as the
Superintendent of North Colonie Central Schools,

                 *Defendants.*
_____

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LEGAL ARGUMENT ............................................................................................1

    A. The New Regulations Broadly Interpret the DD Act and Warrant
       Deference Pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Def.
       Council, Inc.* ..............................................................................................1

    B. Blue Creek Elementary School is a Service Provider and Subject
       to DRNY's Access Authority as the Protection and Advocacy
       System for New York State ......................................................................3

    C. The Complaints Received by DRNY Fall Squarely within the
       Definition of Abuse and Neglect in the New DD Regulations ................5

    D. A State's Statute Authorizing the P&A Can Not Limit the
       Access Authority Afforded P&A's by Federal Law .................................7

CONCLUSION .......................................................................................................7

## INTRODUCTION

The U.S. Department of Health and Human Services ("HHS"), issued updated regulations pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C. § 15041 et seq.) ("DD Act"). See, 45 C.F.R. Part 1386, Subpart C. Effective August 26, 2015, the regulations govern activities carried out by P&A systems, including P&A systems' access to service providers, individuals with developmental disabilities and records – which are fundamental to this proceeding. HHS re-defined abuse and neglect, clarified the entities subject to access and codified judicial decisions interpreting P&A access authority including the Second Circuit's decision in *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 242 (2d Cir. 2006) (hereinafter "*Hartford*").

DRNY is seeking permanent injunctive relief prohibiting Defendants from barring plaintiff Disability Rights New York's ("DRNY") access to Defendants' Blue Creek Elementary School to complete a full investigation of multiple complaints alleging abuse and neglect of students with developmental and other disabilities. Therefore, this memorandum is submitted to demonstrate DRNY's continued authority to access Defendants' school under the new regulations.

## LEGAL ARGUMENT

A. The New Regulations Broadly Interpret the DD Act and Warrant Deference Pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*

The new regulations, and the Supplementary Information to the regulations issued by HHS, broadly define the P&A's authority pursuant to the DD Act. HHS' interpretation of the DD Act through these regulations warrants great deference because HHS, through its Administration on

1

Intellectual and Developmental Disabilities ("AIDD"),[1] is authorized to administer the DD Act. 42 U.S.C. 15004(b); See, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *U.S. v. Mead Corp.*, 533 U.S. 218, 229, 121 S.Ct. 2164 (2001); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219-20 (2d Cir. 2014)("Deference under *Chevron* is appropriate if it is 'apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law.'").

Significantly, HHS rejected all recommendations that would limit P&A access authority, and consistently interpreted the DD Act in a manner that facilitates and enhances P&A authority to investigate allegations of abuse and neglect and monitor locations providing services, supports and other assistance to individuals with disabilities. 80 FR 44795, see e.g., 80 FR 44799 (rejecting proposal to add willful intent to definition of abuse because it would "complicate, and even potentially eliminate, a P&A's ability to conduct an appropriate investigation"), 44801 (expanding records access regulations is "necessary to meet Congress' underlying intent to ensure necessary access to records to promote the P&A's authority to investigate abuse and neglect and ensure the protection of rights"), 44804 (new provision authorizing P&A access to treatment team meetings is consistent with DD Act which "supports broad access to individuals to monitor conditions relating to safety and health"), 44804 (rejecting a showing of "substantial allegations of wrongdoing" as a condition for access as "the DD Act expresses a broader intent, that includes, e.g., the authority to 'have access . . . to any individual with a developmental disability in a location

---

[1] The Administration on Intellectual and Developmental Disabilities (AIDD) is the agency with the Department of Health and Human Services which administers the grants to P&A systems pursuant to the DD, PAIMI and PAIR Acts.

in which services, supports, and other assistance are provided to such an individual'")(citation omitted).

    B. <u>Blue Creek Elementary School is a Service Provider and Subject to DRNY's Access Authority as the Protection and Advocacy System for New York State.</u>

The DD Act directs that P&As have access "to people with developmental disabilities in a *location* in which services, supports, and other assistance are provided." 42 U.S.C. 15043(a)(2)(H)(emphasis added). Under the former regulations, HHS defined "location" as a facility. See, former 45 C.F.R. 1386.19. HHS, recognizing the significant transition to community living for people with disabilities in the decades since the former regulatory enactment, broadened the definition of "location" beyond a facility. A P&A "shall have reasonable unaccompanied access to public and private *service providers*, programs in the State, and to all areas of the *service provider's* premises that are used by individuals with disabilities or are accessible to them." 45 C.F.R. § 1386.27(b)(2) (emphasis added); see, 80 FR at 44800 ("Twenty years ago it was common for an individual to live in a large congregate setting. Now an individual is more likely to be living in a small group home, in an adult supported living (foster) home, with his or her own family or family member, or independently living in his or her own home."). The P&A authority to access such service providers to conduct investigations of abuse and neglect and for routine circumstances, including monitoring is the same authority that the P&A was given to access facilities under the former regulations. 45 C.F.R. 1386.27 (b) and (c).

HHS deliberately elected not to define the term "service provider":

> To define an exemplary list of 'service providers' in a regulation would not allow for the broad range of entities currently providing services to be inclusively represented. The DD Act is clear that P&As have access to people with developmental disabilities 'in a location in which services, supports, and other assistance are provided' . . . The [DD Act] is not

3

explicit about who might be providing such services, intentionally leaving this flexibility to evolve with systems.

80 FR 44800.

HHS' reliance on the language of the statute is consistent with the arguments previously asserted by DRNY and the Departments of Justice and Health and Human Services in their joint Statement of Interest. See, *Pl. Mem. of Law. in Resp. to Defs.' Mot. Summ. J.* at 1; *Pl. Mem. of Law. in Reply. to Defs.' Mot. Summ. J.* at 6-7; *Stmt. of Interest of the U.S.* at 7 - 11. The key to determining whether Blue Creek School is a "facility" under the prior regulations or a "service provider" under the current scheme is based on the services, supports and assistance provided by the entity to which access is sought. Defendants admit they provide special education; evaluate students for the purpose of identifying and providing services to those with disabilities; conduct functional behavior assessments; provide counseling; develop and implement behavior intervention plans; provide supportive therapies including Occupational Therapy, Physical Therapy, and Speech Therapy; administer and supervise medication; provide nursing services; and provide specially designed instruction to students with disabilities. Keegan Supp. Decl. Ex. 1, Resp. No. 1-4, 7 – 18, 23 - 32; Ex. F, Resp. No. 2. These are irrefutably "services, supports, and other assistance" that define a "service provider" and "facility" within the meaning of the DD Act. See, 42 U.S.C. § 15043(a)(2)(H); former 45 C.F.R. § 1386.19; see also, *Hartford Bd. of Educ.*, at 242. (Public school program providing special education and related services to students with disabilities is a location that provides care or treatment to individuals with disabilities within the meaning of the DD Act).

> Moreover, the new regulations codify the Second Circuit's decision in *Hartford,* providing:
>
> Educational agencies, including public, private, and charter schools, as well as, public and private residential and non–residential schools, must provide a P&A with the name of and contact information for the parent or guardian of a student for whom the P&A has probable cause to obtain records under the DD Act.

45 C.F.R. § 1386.25(f).

This provision affirms that a public school that provides services and supports to individuals with disabilities is an entity to which the P&A has access when investigating abuse and neglect allegations. In its comments regarding this and other entity-specific regulations which must provide contact information - including public schools, HHS adopts the exact language the DD Act uses to describe locations to which P&As must have access for abuse and neglect investigations:

> AIDD included various additional examples that may be helpful for clarifying the types of *facilities and organizations providing services, supports and other assistance to individuals with developmental disabilities* from which P&As have access to records. These additions are clarifying examples and not intended to limit the types of organizations whose reports are subject to this requirement.

80 FR at 44802 (emphasis added) quoting 42 U.S.C. 15043(a)(2)(H); see also 44801 (commenting on *Hartford*). Accordingly, in light of the services and supports provided by Defendants to students with disabilities, Blue Creek School is a service provider within the meaning of 45 C.F.R. § 1386.27(b)(2).

C. <u>The Complaints Received by DRNY Fall Squarely within the Definition of Abuse and Neglect in the New DD Regulations.</u>

Despite commenter demands to narrow the definitions of abuse and neglect, HHS expanded both terms to ensure the safety and well-being of individuals with disabilities in accordance with the DD Act. With regard to abuse, HHS rejected language that would require a showing of "willful infliction of injury," reasoning that such a requirement would "complicate and even potentially eliminate, a P&A's authority to conduct an appropriate investigation. Likewise, HHS rejected the phrase "repeated and/or egregious" from the proposed definition, concluding that such language was inconsistent with the DD Act, which is intended "to provide individuals with the opportunity and support to 'live free of abuse, neglect, financial and sexual exploitation, and violations of their

5

legal and human rights'." 80 FR at 44799 quoting 42 U.S.C. §15001(a)(16)(F). Finally, HHS expanded the former definition of abuse to authorize the P&A to determine, "in its discretion, that a violation of an individual's legal rights amounts to abuse, such as if an individual is subject to significant financial exploitation," reasoning that P&A authority must include the ability to investigate violations of regulations and judicial precedent as well as statutes and Constitutional rights. 45 C.F.R. §1386.19; 80 FR at 44799.

Similarly, HHS expanded the definition of neglect to include "failure to take appropriate steps to prevent harassment or assault by a peer or self-abuse." 45 C.F.R. §1386.19. HHS determined that "P&As need the authority to investigate acts or omissions leading to this type of situation, which can put the health, safety, and life of an individual with a developmental disability at risk." 80 CFR at 44800. HHS also rejected language that would narrow the definition by requiring that acts or omissions of neglect be repeated acts, finding that the "DD Act does not require 'repeated' incidents to qualify under this definition. In fact, HHS determined that "even a single instance" of the act or omission constituting abuse or neglect "is should be sufficient to constitute the type of circumstance that would give the P&A authority to initiate an investigation." 80 CFR at 44799.

HHS's broad interpretations of both abuse and neglect dispel Defendants' claims that the complaints which prompted DRNY to seek access to Defendants' school do not constitute abuse and neglect as defined by the former regulation. Not only do the allegations fall squarely within the definitions of the former and current regulations, HHS has explicitly stated that definitions are to be read broadly and can include even a single act or omissions that causes harm, not just physical injury and death. 45 C.F.R. §1386.19; former 45 C.F.R. 45 C.F.R. § 1386.19.

D. <u>A State's Statute Authorizing the P&A Can Not Limit the Access Authority Afforded P&A's by Federal Law.</u>

The new regulations conclusively dismiss Defendants assertion that New York Executive Law § 558 limits DRNY's authority to access service providers such as Defendants' Blue Creek School. See, *Defs.' Mem. of Law in Supp. of Summ. J.* at 5. While DRNY has already demonstrated that Executive Law §588 provides DRNY with the full authority granted by federal law (see, *Pl. Mem. of Law. in Resp. to Defs.' Mot. Summ. J.* at 4 - 5), the new regulations expressly prohibit any limitation imposed by a State that would impair a P&A's authority to carry out its federal mandate to investigate allegations of abuse and neglect of individuals with disabilities.

> A Protection and Advocacy System may exercise its authority under State law where the State authority exceeds the authority required by the Developmental Disabilities Assistance and Bill of Rights Act of 2000. *However, State law must not diminish the required authority of the Protection and Advocacy System as set by the [DD] Act.*

45 C.F.R. § 1386.21 (emphasis added).

## CONCLUSION

The new regulations interpreting the DD Act reflect a broad interpretation confirming P&A access authority to individuals, service providers and records and require great deference. For all the reasons detailed herein, DRNY respectfully requests that this Court grant DRNY summary judgment and declaratory and permanent injunctive relief granting DRNY access to Blue Creek Elementary School and the records of individuals with disabilities therein based on the regulations in place at the time this action was commenced as well as the new regulations that went into effect July 27, 2015 and attorney fees.

7

Respectfully submitted,

By: _____
Julie M. Keegan

DISABILITY RIGHTS NEW YORK

JULIE M. KEEGAN
Bar Roll No. 518293

JENNIFER J. MONTHIE
Bar Roll No. 512427

CLIFF ZUCKER
Bar Roll No. 102871

October 2, 2015

725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861