**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DISABILITY RIGHTS NEW YORK,

                *Plaintiffs,*

      -against-                    CIVIL ACTION NO.
                                              1:14-cv-00744

NORTH COLONIE BOARD OF EDUCATION,
North Colonie Central Schools, and
Mr. D. Joseph Corr, in his official capacity as the
Superintendent of North Colonie Central Schools,

                *Defendants.*
_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................................. 2

ARGUMENT .................................................................................................................................. 3

   I.    PLAINTIFF IS A PREVAILING PARTY AND THEREFORE SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES AND COSTS. ........................................................... 3

   II.   THE ATTORNEYS' FEES AND EXPENSES REQUESTED BY THE PREVAILING PLAINTIFF ARE FAIR AND REASONABLE. ..................................................................... 4

      A.   DRNY Exercised Significant Billing Judgment in Determining the Lodestar. ............................ 5
      B.   The Time and Labor Required for this Litigation is Reasonable .................................................. 6
      C.   The Hourly Rates of All Attorneys are Reasonable. .................................................................. 10

   III.  THE COSTS AND EXPENSES REQUESTED BY THE PREVAILING PLAINTIFF ARE FAIR AND REASONABLE. ................................................................................................ 14

CONCLUSION ............................................................................................................................ 15

**PRELIMINARY STATEMENT**

Plaintiff, Disability Rights New York, through counsel, submits this Memorandum of Law in Support of its Motion for an Award of Attorneys' Fees, Litigation Expenses and Costs. Disability Rights New York, obtained a Decision and Order, enforceable by this Court, requiring Defendants to fully and uniformly provide Plaintiff with access rights at Defendants' public school programs which are guaranteed by the P&A Acts. The total fees of 209,532.75 and costs of $778.78 are reasonable given the issues in the case and the numerous and extensive legal challenges raised by Defendants over the course of this litigation. Accordingly, prevailing Plaintiffs' Motion should be granted.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Disability Rights New York (DRNY), the designated protection and advocacy system for individuals with disabilities in New York State, brought this pursuant 42 U.S.C. § 1983 action on June 18, 2014 to secure the rights guaranteed by the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42. U.S.C. § 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15001 *et seq.*; and the Protection and Advocacy for Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e (hereinafter collectively referred to as the "P&A Acts"). The case arose when DRNY, acting on complaints that students with disabilities within in Defendants' care were subjected to abuse and neglect, informed Defendants that it intended to exercise its authority under the P&A Acts to investigate these claims and monitor Defendants' programs. Despite being fully apprised of DRNY's legal right and authority to conduct this investigation, Defendants repeatedly blocked its

efforts by (1) refusing to allow its attorneys to access the school buildings to determine whether students were being unnecessarily and inappropriately restrained and put in non-compliant timeout rooms; (2) not allowing DRNY to investigate allegations that students were eloping from the school while in Defendants' care; (3) not allowing DRNY to investigate claims of abusive conduct by school employees; (4) not allowing DRNY to investigate a claim related to medication administration; and (5) refusing to provide DRNY with documents requested as part of DRNY's investigation.

On June 20, 2014, a hearing was held and the court granted DRNY a temporary restraining order enjoining Defendants from denying access to access Defendants' school. Following extensive discovery and a discovery hearing before Magistrate Treece, the parties cross-moved for summary judgment. By Order dated March 21, 2016, this Court granted summary judgment for DRNY, declaring DRNY is authorized to access Blue Creek Elementary School and enjoining Defendants from asserting that DRNY is not so authorized when investigating allegations of abuse and neglect of students with disabilities. Defendants' motion was wholly denied.

## **ARGUMENT**

### I.  PLAINTIFF IS A PREVAILING PARTY AND THEREFORE SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES AND COSTS.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .

Courts have broadly defined a "prevailing party" for purposes of triggering the application of a fee shifting statute. As the Supreme Court has held, a plaintiff need not win every single issue or even

the "central issue" in order to obtain prevailing party status. A prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought." *Texas Teachers Ass'n v. Garland Sch. Dist.,* 489 U.S. 782, 791 (1989). In other words, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 115 (1992).

There can be no dispute that Plaintiff is the prevailing party. As noted above, Plaintiff prevailed on every issue raised in the Complaint and obtained a judicially sanctioned change in the legal relationship between the parties." See, *Roberson v. Giuliani,* 346 F.3d 75, 79 (2d Cir.2003) (A prevailing party "must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned."); Neroni v. Coccoma, No. 3:13-CV-1340 GLS/DEP, 2014 WL 3866307, at *2 (N.D.N.Y. Aug. 6, 2014), aff'd sub nom. Neroni v. Hinman, Howard & Kattell, LLP, 607 F. App'x 113 (2d Cir. 2015).  Here, DRNY obtained a legally enforceable order that, with respect to its access, substantially modifies Defendants' behavior in every area of the public school to which students with disabilities have access.  Affidavit of Cliff Zucker, ¶ 5, 8 (hereafter Zucker Aff.).

## II.  THE ATTORNEYS' FEES AND EXPENSES REQUESTED BY THE PREVAILING PLAINTIFF ARE FAIR AND REASONABLE.

Reasonable attorneys' fees are the product of the hours reasonably expended and the applicable hourly rate for the legal services, which is known as the "lodestar." *Hensley v. Eckerlart,* 461 U.S. 424, 433 (1983); see also, *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011). "There is a "strong presumption" that the lodestar represents the appropriate award."

*Neroni v. Coccoma*, 2014 WL 3866307, at *3 citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010); see also, *Millea* at 166 (the lodestar "creates a "presumptively reasonable fee").

    A.  DRNY Exercised Significant Billing Judgment in Determining the Lodestar.

Prior to calculating its lodestar fee, DRNY carefully reviewed the contemporaneous time records of the time spent by all attorneys on this case and exercised significant billing judgment before calculating the lodestar fee. Zucker Aff. ¶ 41 - 48. Specifically, DRNY's counsel eliminated time involved in visiting the school to investigate conditions, speak with staff and students time spent on activities that were clerical functions. DRNY also removed all time spent investigating the allegations of the complaint after the commencement of this litigation, as well as time drafting a lengthy preliminary investigative report. Id. All voluntary reductions are detailed in Zucker Decl., Exhibit D and total 134.4 hours. DRNY incorporated this generous downward adjustment when calculating its lodestar. [1]

The adjusted lodestar amounts of DRNY's counsel, exclusive of travel,[2] are as follows:

| Attorney | Hours | Rate | Lodestar |
| --- | --- | --- | --- |
| Cliff Zucker | 52.6 | $345.00 | $ 18,147.00 |
| Jennifer Monthie | 79.1 | $300.00 | $ 23,730.00 |
| Julie Keegan | 489.8 | $300.00 | $147,694.00 |
| Chris Turner | 29.6 | $275.00 | $ 8,140.00 |
| Stefen Short | 20.6 | $170.00 | $ 3,502.00 |
| Prianka Nair | 14.0 | $150.00 | $ 2,100.00 |
| Shain Neumeier | 14.10 | $175.00 | $ 3,430.00 |

---

[1] DRNY's attorneys did not make downward adjustments to their lodestar based on this court's partial denial of summary judgement. The Supreme Court has instructed that when a plaintiff raises related legal theories or claims with a common core of facts, the plaintiff's lack of success on certain of the related legal theories does not justify reducing a fee where the plaintiff has obtained an excellent result. *Hensley v. Eckerhart*, 461 U.S. 424, 425 (1983). The Court explained: "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of …certain grounds is not a sufficient reason for reducing a fee. The result is what matters. *Id.* (emphasis added). Here DRNY ultimately received all relief sought in the Temporary Restraining Order and the Decision and Order.
[2] This chart does not include travel time that is included in the total lodestar. Travel time was billed at one-half of the attorney's billable rate. Zucker Aff., Ex. D.

Zucker Aff., Ex. B.

    B. <u>The Time and Labor Required for this Litigation is Reasonable</u>

**Staffing Decisions Were Appropriate and Justified**

      In calculating the reasonableness of time spent, a court can take into consideration how many staff took part in a case and whether the level of staff involvement was reasonable. <u>See</u>, *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146-1147 (2nd Cir. 1983) (it was proper for district court to consider involvement of collaborating attorneys. Courts can use significant discretion in making this determination based on the scope and complexity of a case. <u>Id.</u> In calculating the amount of attorney fees to award, a court can take into consideration how many staff took part in a case and whether the level of staff involvement was reasonable. Courts can use significant discretion in making this determination based on the scope and complexity of a case. *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146-1147 (2nd Cir. 1983).

      DRNY designated attorney Keegan as the primary attorney on this litigation in light of the novelty of the issues in this litigation in New York State, the complexity of the numerous statutes involved, her extensive knowledge of the laws governing students with disabilities, and her direct knowledge of the complaints received. Moreover, designating Ms. Keegan substantially reduced the billable time of Mr. Zucker, a highly experienced attorney, and limited the time expended by attorney Monthie as well. Zucker Aff. ¶ 51.

      In addition, DRNY used less experienced staff attorneys for research on specific issues raised in this litigation to reduce costs. In June 2015, Julie Keegan employed a staff attorney, Shain Neumeier, to complete research on Defendants arguments regarding DRNY's alleged failure

6

to: (1) exhaust administrative remedies under the IDEA; and (2) attempt resolution prior to litigation under PAIMI.  The research and memo completed by attorney Neumeier was incorporated in DRNY's memorandum of law in response to Defendants' motion for summary judgment. Zucker Aff. ¶ 56.

Likewise, in July 2015, Julie Keegan instructed attorney to complete research on the reasonableness of concluding that students with disabilities pursuant to the IDEA are individuals with disabilities pursuant to the P&A Acts and regulations.  Zucker Aff. ¶ 57. The research completed by Shain Neumeier was relied on in DRNY's memorandum of law in response to Defendants' motion for summary judgment.  Id.

When necessary, additional DRNY attorneys worked on the case to meet strict time demands. Zucker Aff. ¶ 52.  However, there was no duplication of effort, and this was dictated by the exigency of the situation. Id.  Specifically, DRNY first learned of Defendant's refusal to permit access on the afternoon of July 16, 2014.  Knowing that Blue Creek Elementary School was scheduled to close for the school year the following week, DRNY had very limited time to seek a Temporary Restraining Order to insure investigation of the complaints it received regarding students in the ASC 4-6 classroom.  DRNY initiated this litigation two days later by Order to Show Cause along with a complaint, attorney declaration, memorandum of law, and summons. Preparation of these documents required extensive hours in a short time frame and the assistance of staff attorney Stefen Short.  Zucker Aff. ¶ 53.

In addition, in response to a discovery dispute initiated by Defendants, Magistrate Treece issued an order on January 7, 2015 requiring letter briefs from DRNY and Defendants responding to seven discrete questions of law and imposing a deadline of January 11, 2015.  Dkt. No. 36.

Because of the short timeframe to address these seven complex questions, DRNY attorney Prianka Nair was instructed to complete research and a memorandum on two of the seven questions. Ms. Nair's research and memo were incorporated in the 17 page letter brief submitted to Magistrate Treece on January 11, 2015. Zucker Aff. ¶ 54. Notably, DRNY voluntarily reduced these hours by half. Zucker Aff. ¶ 47, 54.

**The Novelty, Complexity and Difficulty of the Questions Presented is Significant**

The novelty and difficulty of the questions at issue in the litigation are an appropriate consideration for courts when assessing the reasonable number of hours a case requires. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 n.3, 190 (2nd Cir. 2007). "While a district court may not adjust the lodestar based on [the novelty and complexity of a case], it may use them to determine the reasonable number of hours the case requires. That is a permissible consideration and one that a trial judge is particularly well-situated to evaluate." *Millea v. Metro-N. R. Co.*, 658 F.3d at 167.

This is the first fully litigated case confirming the scope of DRNY's authority as the P&A system in New York State. Zucker Aff. ¶ 71. While the Second Circuit's decision in *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.* (464 F.3d 229 [2d Cir. 2006]) established a road map for the some of the issues raised in this litigation, other questions were novel to New York, including the interpretation of the terms "abuse" and "neglect" under the P&A regulations; whether a student with a disability under the IDEA is likely an individual with a disability under the P&A Acts; and whether the scope of DRNY's monitoring authority extends to service providers such as public schools. Zucker Aff. ¶ 72. Extensive research of decisions on these issues in other jurisdictions was required in presenting DRNY's arguments before the Court. Zucker Aff. ¶ 73. Moreover, the Department of Justice's appearance in this

litigation speaks to the importance of the issues presented and the outcome achieved. Zucker Aff. ¶ 83.

The litigation was complex because all three P&A Acts and their respective regulations were at issue because of the variety of disabilities of the students about whom DRNY received complaints. In addition, relevant changes to the DD Act regulations in July 2015 prompted the need for further briefing for the Court. Zucker Aff. ¶ 74.

Moreover, Defendants' papers in support of their summary judgment motion and in response to DRNY's motion were voluminous. Zucker Aff. ¶ 65. In support of their motion for summary judgment, Defendants filed a 40 page memorandum of law, 117 pages of affidavits (61 pages of which were attorney affidavits) and 83 pages of exhibits. Defendants' memorandum of law in response to DRNY's motion was an additional 40 pages supported by an additional 27 page attorney affidavit. Zucker Aff. ¶ 66. Many of Defendants' assertions and arguments were unsupported by law and, at times, fact. Zucker Aff. ¶ 67, 69-70.

Defendants asserted that the need for a page extension to 40 for both the initial memorandum of law and responsive one was required because of the number of statutes and regulations involved in this matter. Notably, DRNY faced the same obstacle, as well as Defendants' excessive submissions and often unsupported arguments, but offered the Court concise arguments with significant legal justification well within the page limits prescribed by local rules. Zucker Aff. ¶¶ 65, 68.

**The Result Obtained in this Litigation is Significant and Impactful**

Courts may also consider the public policy significance of the outcome in the litigation when assessing the reasonableness of the hours expended. *Millea v. Metro-N. R. Co.*, 658 F.3d at 167.

9

This case is of great importance to Protection and Advocacy programs, in general, and persons with disabilities, in particular. As noted by Curt Decker, the Executive Director of the National Disability Network: "P&As often face resistance to their efforts to investigate abuse and neglect." Affidavit of Curtis L. Decker. The Court's well supported recognition of DRNY's statutory access authority to investigate allegations of abuse and neglect of individuals with disabilities in settings where they receive services will also discourage other providers from denying access and forcing litigation. Zucker Aff. ¶ 84. This litigation has consumed a significant portion of the limited resources with which DRNY provides protection and advocacy to people with disabilities in New York. Zucker Aff. ¶ 85.

Most importantly, the Court's well-supported decision in this case is of great significance to all students with disabilities in the State. The occurrence of abuse and neglect in school settings, particularly the use of physical restraint and seclusion and the failure to comply with regulations addressing those interventions, is often well-hidden. Many students subjected to such treatment are unable or fearful to communicate what has happened to them. Thus, judicial confirmation of DRNY's authority to investigate allegations of abuse and neglect from confidential sources and monitor the safety of students with disabilities is momentous. Zucker Aff. ¶ 86.

C. <u>The Hourly Rates of All Attorneys are Reasonable.</u>

A reasonable hourly rate is to be calculated based upon the prevailing market rates in the community for attorneys of comparable skills, experience and reputation. *Blum v. Stenson,* 465 U.S. 886, 895 (1984). "A district court should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d at 193. The relevant

market for purposes of determining the prevailing rate is the community in which the district court sits. Id.; *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir.2005).  Attorney Zucker was admitted to the practice in 1982, over 34 years ago. Zucker Aff. ¶ 20.  Attorney Keegan was first admitted in 1999, over 17 years ago. Keegan Aff. ¶ 5.   Attorney Monthie, was admitted to practice in 2004, almost 13 years ago. Monthie Aff. ¶ 2.  All are experienced litigators and have devoted all or most of their legal careers to representing persons with disabilities and other vulnerable persons. Zucker Aff., Ex. C.  Based upon their extensive experience and the submitted affidavits of Cliff Zucker, Julie Keegan, and Jennifer Monthie, the reasonable hourly rate for Attorney Zucker is $345 and the reasonable hourly rate for Attorneys Keegan and Monthie is $300.

Federal courts in the Northern District of New York have approved rates within the range being sought by counsel in the instant case. The Northern District of New York has acknowledged that an hourly rate of $345 permissible for the most experienced attorneys." *Neroni v. Coccoma*, 2014 WL 3866307 at *3 (N.D.N.Y. Aug. 6, 2014). Mr. Zucker has over 30 years of specialized legal experience in disability rights law and litigation in the P&A system and currently serves as General Counsel and Legal Director at DRNY. Zucker Aff. ¶ 22.  Mr. Zucker also served as the Executive Director of Disability Advocates, Inc. from 1989 to 2013. Zucker Aff. ¶ 21.  Mr. Zucker has extensive litigation experience and served as lead counsel in several major systemic federal court actions in District Courts and the Second Circuit. Zucker Aff. ¶ 23, 27 - 34.

Attorneys with experience of a decade or more regularly warrant a rate of $300 per hour in the Northern District. *Curtis v. City of Kingston*, 2016 WL 1223471 at *6 (N.D.N.Y. Mar. 28, 2016) ($300 per hour for an experienced senior attorney); *Pope v. County of Albany*, 2015 WL 5510944 at **10-11, 16 (N.D.N.Y. Sept. 16, 2015) ($250-350 per hour for senior attorneys with more than 10 years of experience); *Seidenfuss v. Diversified Adjustment Services*, 2016 WL

11

1047383 at *2 (N.D.N.Y. Mar. 15, 2016) (awarding an experienced attorney $300). Moreover, the Second Circuit acknowledged that hourly rates for civil rights attorneys can be higher than that in other matters. See, *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir.2012); Neroni v. Coccoma, 2014 WL 3866307, at *3; *Deferio v. Bd. of Tr. of State Univ. of New York,* No. 5:11-CV-0563 GTS/RFT, 2014 WL 295842, at *8 (N.D.N.Y. Jan. 27, 2014) ("[A]s far back as 2009, courts in this District have awarded fees to victorious civil rights attorneys at rates far in excess of $210 and $150 per hour").

Ms. Monthie has served as an attorney in the P&A system for the last 13 years and currently is the Director of the PADD, PATBI and PAAT programs.[3] Monthie Aff. ¶ 1, 2. She has practiced as lead counsel in cases in New York State Courts (Supreme Court, 3rd Department and Court of Appeals) and the United District Courts for the Northern and Eastern District of New York. Monthie Aff. 3. She also has conducted investigations pursuant to the authority of the Protection and Advocacy Acts that have resulted in litigation to protect people with disabilities in general as well as redress of the specific grievance of individuals with disabilities. Monthie Aff. 4. She is counsel in *DRNY v. Wise*, 1:15-cv-00032 (GLS-CFH) (NDNY), an important case in which on March 18, 2016 Judge Sharpe denied New York's motion to dismiss DRNY's complaint for access to investigatory records of a state agency charged with investigating allegations of abuse and neglect of people with disabilities. Zucker Aff. ¶ 31.

---

[3] The Protection and Advocacy for Individuals with Developmental Disabilities (PADD) is the largest P&A program operated by DRNY. Ms. Monthie is responsible for managing 11 attorneys in three offices. Ms. Monthie also supervises two attorneys and one advocate staff in the Protection and Advocacy for Assistive Technology and the Protection and Advocacy for Traumatic Brain Injury programs.

Ms. Keegan has served as an attorney in the P&A System for nearly three years and is currently the Supervising Attorney for the PADD program wherein she supervises the substantive work, including litigation, direct representation and systemic advocacy, of 10 attorneys. Keegan Aff. ¶ 1, 8.  Prior to joining DRNY, Ms. Keegan operated her own solo practice dedicated to special education law and future planning for individuals with disabilities for nearly a decade. She represented hundreds of parents and students in special education matters which, at times included representation in administrative hearings.  Keegan Aff. ¶ 10 – 12.  She also practiced in state Surrogate's and Supreme courts in guardianship matters.  Keegan Aff. ¶ 13.  Ms. Keegan also served as a court attorney in the Supreme Court Appellate Division for the Third Department for two years where she reviewed and researched hundreds of appeals and drafted decisions for all sitting appellate judges. Keegan Aff. ¶ 14.

Mr. Turner has 10 years of experience, including extensive litigation experience.  He has litigated jury trials, conducted over 600 depositions, 300 motions, 12 appeals and more than 1000 court appearances. Monthie Aff. ¶ 10; Zucker Aff. Attachment C.  Attorneys with more than three years of experience support a rate of $200 and attorneys under three years of experience support a rate of $170. *Pope v. County of Albany*, 2015 WL 5510944 at **10-11, 16 (N.D.N.Y. Sept. 16, 2015) ($200 for senior associates with more than three years of experience); *R.M. Railcars LLC v. Marcellus Energy Services LLC*, 2015 WL 4508451 at *6 (N.D.N.Y., July 24, 2015) $170 per hour for an associate with two years of experience). Mr. Short has over 3 years experience in the P&A system. Mr. Short is lead counsel on another P&A access denial case currently pending in the Eastern District of New York.  *Disability Rights New York v. New York City Dept. of Correction*, 1:15-cv-01285 (EDNY).  Monthie Aff. ¶ 14 - 17.   Shain Neumeier has 3 years of experience and is admitted to practice in three states.  Monthie Aff. ¶ 11-12; Zucker Aff., Attachment D.  Shain

13

Neumeier performs extensive research for P&A litigation and systemic projects impacting individuals with disabilities. Monthie Aff. ¶ 13; Zucker Aff., Attachment D.  Ms. Nair has 1 year of experience. Monthie Aff. ¶ 20.  She has successfully represented many individuals with disabilities on a wide range of legal issues, conducted numerous investigations of abuse and neglect, and is the lead attorney in a guardianship removal proceeding in state Supreme Court. Monthie Aff. ¶ 22.

### III. THE COSTS AND EXPENSES REQUESTED BY THE PREVAILING PLAINTIFF ARE FAIR AND REASONABLE.

Prevailing Plaintiffs also seek reimbursement of litigation expenses and costs totaling $778.78.  Zucker Aff. ¶ 77; Ex. E..  "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  Fed. R. Civ. P. 54.  Nevertheless, DRNY has elected not to claim costs related solely to travel to Blue Creek School to investigate the complaints under the authority of the temporary restraining order issued by this Court on June 20, 2014, and other costs related exclusively to the investigation of the complaints which resulted in this litigation.   Zucker Aff. ¶ 80.  Further, DRNY has not sought reimbursement for costs of copying and postage, nor the time expended by administrative support staff for tasks such as scanning, filing, copying, numbering exhibit pages, and assembling exhibits and privilege log. Zucker Aff. ¶ 81.

## **CONCLUSION**

For all the reasons set forth above, DRNY respectfully requests that the Court award it attorneys' fees in the amount of $209,532.75 and $778.78 for litigation expenses and costs.

Respectfully submitted this 5th day of April 2016.


By:   /s Julie M. Keegan

DISABILITY RIGHTS NEW YORK
JULIE M. KEEGAN
Bar Roll No. 518293
JENNIFER J. MONTHIE
Bar Roll No. 512427
CLIFF ZUCKER
Bar Roll No. 102871
725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861